NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DARRIN V., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, Z.V., L.V., *Appellees.*

No. 1 CA-JV 18-0290
FILED 1-29-2019

Appeal from the Superior Court in Mohave County
No. L8015JD201607041
The Honorable Derek C. Carlisle, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Maria Elena Cruz joined.

---

**H O W E,** Judge:

**¶1** Darrin V. ("Father") appeals the juvenile court's order terminating his parental rights to Z.V. and L.V. on the grounds of chronic substance abuse under A.R.S. § 8–533(B)(3) and time in an out-of-home placement under A.R.S. § 8–533(B)(8)(c). For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2** In August 2015, the Department of Child Safety received a report that Kailey V. ("Mother")[1] and Father were using and selling drugs and neglecting Z.V. and L.V. In July 2016, Father was arrested and incarcerated for possession of narcotics and drug paraphernalia. He was released from jail in October 2016 and placed on probation. In December 2016, the Department received a report that the parents had left the children with their paternal grandparents because they were unable to feed them and lacked housing. The following day, the Department took temporary custody of the children and placed them with their paternal grandparents.

**¶3** The Department attempted to contact the parents but could not locate them. Father and Mother were no longer at their residence when Department case workers visited. The Department learned from the property manager that Father and Mother had been evicted because of failure to pay rent and reports that they were using drugs in the home.

**¶4** In its report to the juvenile court following its investigation, the Department noted that the parents had been abusing methamphetamine and heroin intravenously, were evicted from their home due to drug use and failure to pay rent, had no means of transportation, and were unemployed. The Department further noted that the children

---

[1] The juvenile court terminated Mother's parental rights to Z.V. and L.V., and she is not a party to this appeal.

were behind on "immunization and well child checks" and the paternal grandparents had been providing for the children since November 2016.

¶5        The Department petitioned for a dependency, alleging that Father and Mother had neglected the children by abusing substances and failing to provide them with the necessities of life. In January 2017, the juvenile court found that the children were dependent with respect to both parents. Father did not attend the dependency hearing and his whereabouts remained unknown.

¶6        The Department located Father after receiving a report that he was arrested on February 26, 2017. In March 2017, a Department case manager met Father in jail. Father was released from jail in May 2017. The Department referred Father for drug testing, supervised visits, parenting classes, substance-abuse assessment and treatment, individual counseling, family counseling, and parent-aide services. The Department had specific goals for Father to accomplish: maintenance of stable housing and employment and demonstration of a pattern of sobriety and ability to provide for his children. Father participated in drug testing from May 2017 to August 2017, but then stopped testing for the remainder of the dependency.

¶7        In October 2017, the Department reported that Father had completed parenting classes and found stable employment. Later that month, however, Father stopped visiting the children and the Department received a report that Father and Mother had been seen "getting high together." The juvenile court then ordered Father to submit to a urinalysis test. Father did not comply, and the Department lost contact with him for some time. According to the paternal grandparents, Father had relapsed, lost his job, and was "living on the streets."

¶8        In the months to follow, Father became involved in more criminal activity. In November 2017, security footage showed Father doing a "dine and dash." In December 2017, he was arrested for shoplifting from a grocery store. In January 2018, he was arrested for possession of drug paraphernalia after the police found needles inside his backpack.

¶9        Later in January, Father was hospitalized for a blood infection apparently contracted from sharing a contaminated needle, and he admitted to the Department that he had relapsed. The juvenile court asked him to grow his hair out so that he could take a hair follicle test for drugs, but he refused to do so. The Department also re-referred Father for

urinalysis testing, but his referral expired because he repeatedly failed to comply with testing requirements.

¶10         In March 2018, Father was arrested for disorderly conduct. The Department subsequently moved to terminate his parental rights, alleging, among other grounds, chronic abuse of dangerous drugs under A.R.S. § 8–533(B)(3) and length of time in care under A.R.S. § 8–533(B)(8)(c). Upon his release from jail in May 2018, he entered an inpatient drug treatment program.

¶11         At the termination hearing in June 2018, a Department case manager testified that Father's participation in reunification services was inconsistent and that he had not maintained a normal relationship with his children. Although the Department had referred him for substance-abuse assessments and counseling, three of his referrals were closed out unsuccessfully because he did not respond to any outreach efforts and two other referrals were closed out due to his incarceration. The case manager also noted that when Father was arrested in March 2018, he admitted to police that he was using methamphetamine. In addition, she testified that after Father had admitted to relapsing, he had refused to enter inpatient drug treatment because Mother was unable to attend with him. He insisted instead that "they were [going to] detox together at home."

¶12         The case manager opined that a substantial likelihood existed that Father was incapable of exercising effective parental care in the near future. She stated that although at one point the only barrier to reunification was Father's housing situation, Father's drug relapse had "put this case . . . back to square one." She also stated that during the six months leading up to the termination hearing, Father had neither stable housing nor stable income.

¶13         The case manager testified further that the children's grandparents were meeting all their needs and were willing to adopt them, and if they were unable to adopt them, the children were otherwise adoptable. She stated that the grandparents had raised the children throughout their lives and that the children were secure living with the grandparents and bonded well with them. She also stated that terminating Father's parental rights would be in the children's best interests because it would provide them with stability and permanency in their lives. She was also concerned that if Father was given more time to complete his inpatient rehabilitation program, he could still relapse again, which would seriously delay permanency and cause the children to remain in foster care for an indeterminate period.

¶14      The juvenile court determined that the Department had made reasonable efforts to reunify Father with the children and had proved by clear and convincing evidence that termination was warranted based upon Father's chronic substance abuse and the length of time the children had been in an out-of-home placement. In addition, the court found that the children would benefit from termination because adoption by their grandparents would provide them with stability and legal permanency. Father timely appealed.

## DISCUSSION

¶15      Father argues that insufficient evidence supports the court's findings that he was unable to remedy the circumstances that caused Z.V. and L.V. to be in an out-of-home placement and that a substantial likelihood existed that he would be incapable of exercising proper and effective parental care and control in the near future. Father also argues that termination was not in the children's best interests.

¶16      A juvenile court's termination order is reviewed for an abuse of discretion. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 58 ¶ 9 (App. 2015). We will affirm an order terminating parental rights so long as reasonable evidence supports the order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009). To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one of the statutory grounds for termination and find by a preponderance of the evidence that termination is in the children's best interests. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286 ¶ 15 (App. 2016). The juvenile court resolves any conflicts in the evidence. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282 ¶ 12 (App. 2002).

### 1. Statutory Ground for Termination

¶17      As pertinent here, to terminate parental rights for 15 months' out-of-home placement, the juvenile court must find by clear and convincing evidence that (1) the children have been in an out-of-home placement for a cumulative total period of 15 months or longer pursuant to court order, (2) the Department made diligent efforts to provide appropriate reunification services, (3) the parent has been unable to remedy the circumstances that caused the children to be in an out-of-home placement, and (4) a substantial likelihood exists that the parent will be incapable of exercising proper and effective parental care and control in the near future. A.R.S. § 8–533(B)(8)(c); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005).

¶18        The juvenile court did not err by finding that the Department proved the 15 months' out-of-home placement ground as a basis for termination. As of the termination hearing, Z.V. and L.V. had been in an out-of-home placement for at least 18 months. And the record shows that the Department had made diligent efforts to provide Father with appropriate reunification services, including urinalysis testing, substance-abuse treatment, parenting classes, family counseling, individual counseling, and parent-aide services. Further, the record supports the court's finding that Father had failed to remedy the circumstances that led to the Department taking custody of the children and that he would be unable to properly care for them in the near future. Under the plan approved by the juvenile court, Father was required to demonstrate a pattern of sobriety and an ability to provide for his children's needs on a daily basis. Despite receiving several remedial services, however, Father was unable to remedy his substance-abuse issues or demonstrate he could meet the children's needs. The Department case manager testified that Father had relapsed and refused to submit requested drug tests and to enter rehabilitation. Further, although Father was in a sober-living home at the time of trial, his housing and employment history before then had been unstable. Moreover, the case manager opined that a substantial likelihood existed that Father was incapable of exercising effective parental care in the near future. Thus, the record supports the finding that the Department proved the requirements for termination under A.R.S. § 8–533(B)(8)(c).

¶19        Father disputes the court's finding that he would be unable to properly care for his children in the near future and that he had failed to remedy the circumstances causing his children's out-of-home placement. Father highlights that he was compliant with his services "at one point during the case" and that he had recently made successful efforts at rehabilitation. While this evidence may support Father's contention that he could be a fit parent, the Department had presented evidence casting doubt on Father's parenting ability. The record shows that within five or six months before the termination hearing, Father had lost his home and employment, relapsed on drugs, and was arrested on multiple occasions. Further, Father's participation in services was sporadic. The Department offered Father drug testing and substance-abuse assessment and treatment, but he consistently missed drug tests, had not submitted a hair follicle for testing, and failed to engage in substance-abuse treatment throughout the dependency. Moreover, Father had enrolled in a residential treatment program only after the case plan had been changed to termination and adoption. Therefore, although Father notes conflicting evidence presented on these issues, his argument fails because this Court does not reweigh evidence on appeal. *See Jesus M.*, 203 Ariz. at 282 ¶ 12.

¶20        Father also argues that because he had entered a residential treatment program, the court should have allowed him more time and opportunity to participate in the program. Father's belated efforts, however, do not entitle him to further time to remedy the circumstances. *See Maricopa Cty. Juv. Action No. JS–501568*, 177 Ariz. 571, 576 (App. 1994) (noting that the window of opportunity for remediation cannot remain open indefinitely and a parent's efforts at recovery can be deemed "too little, too late"). Therefore, although Father's recent efforts are commendable, the juvenile court did not abuse its discretion in finding the Department had proved the statutory time-in-care ground for termination.[2]

### 2. Best Interests

¶21        The record adequately supports the court's finding that Z.V. and L.V. would benefit from termination of Father's parental rights. Terminating parental rights is in the children's best interests if the children will benefit from the termination or will be harmed if the relationship continues. *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179 ¶ 20 (App. 2014). In determining whether the children will benefit from termination, relevant factors to consider include whether placement is meeting the children's needs, an adoption plan is in place, and if the children are adoptable. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3–4 ¶ 12 (2016). Here, the case manager testified that the children were adoptable, in an adoptive placement meeting their needs, and their adoption would give them stability and permanency. Furthermore, she testified that if Father's parental rights were not terminated, the children could potentially be harmed if Father were to lose his housing or relapse again. Thus, the juvenile court did not abuse its discretion by finding that termination was in the children's best interests.

¶22        Father counters that termination of his parental rights was not in the children's best interests because he was bonding with the children and his "parenting skills [were] appropriate." While the record contains evidence of a bond between Father and the children, the record also shows that the children had a strong bond with their grandparents and that Father

---

[2]        Because the juvenile court did not err in terminating Father's parental rights under the 15 months' time-in-care ground, we need not address his claims related to the substance-abuse ground. *See Michael J. v. Ariz. Dep't Econ. Sec.*, 196 Ariz. 246, 251 ¶ 27 (2000) (finding that if sufficient evidence supports the juvenile court's order terminating a parent's rights on any one of the statutory grounds, this Court need not address claims pertaining to the other grounds).

had not demonstrated that he could effectively parent the children. As such, Father is again essentially asking this Court to reweigh the evidence presented at trial. Because the record supports the juvenile court's best interests finding, we reject Father's request to reweigh the evidence. *See Jesus M.*, 203 Ariz. at 282 ¶ 12.

## CONCLUSION

¶23       For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA